[Cite as *State v. Whittaker*, 2024-Ohio-459.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                   :

    Plaintiff-Appellee,               :

                               No. 112780

    v.                                        :

KARLISA WHITTAKER,                         :

    Defendant-Appellant.            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 8, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-674297-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Halie Turigliatti, Assistant Prosecuting Attorney, *for appellee.*

Wegman Hessler Valore and Matthew O. Williams, *for appellant.*

LISA B. FORBES, J.:

{¶ 1} Appellant Karlisa Whittaker ("Whittaker") appeals the trial court's journal entry convicting her of improperly furnishing firearms to a minor. After reviewing the facts of the case and pertinent law, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 2} Following a bench trial, Whittaker was convicted of improperly furnishing firearms to a minor, a fifth-degree felony in violation of R.C. 2923.21(A)(3) with a forfeiture specification. The trial court sentenced her to three months of community-control sanctions.

{¶ 3} It is from this order that Whittaker appeals raising the following assignments of error:

> 1. The trial court committed reversible error in denying Appellant's Rule 29 and renewed Rule 29 Motions as the State Failed to Produce Sufficient Evidence to Sustain a Conviction.

> 2. Appellant's conviction is against the manifest weight of the evidence.

## II. Trial Testimony

### A. Prosecution Witness Testimony

{¶ 4} Detective Brian Sabolik ("Det. Sabolik") testified that on September 9, 2022, he was working at a football game "at Bump Taylor Field * * * in the City of Cleveland." Attendees of the football game were being patted down for weapons as they entered. As Det. Sabolik was stationed at the Arlington entrance, he and his partner "observed two young males walk up to the Arlington entrance, stop, and then turn around and walk away." Det. Sabolik found this suspicious because he believed the young males walked away when they noticed people were being patted down.

{¶ 5} After approximately 20 minutes, Det. Sabolik observed the males "walk across the street first into Forest Hills Park, * * * and we observed them duck

behind the wall for approximately two to three minutes. We then observed them reappear from behind the wall. They came directly over to the Arlington entrance at Bump Taylor Field and went into the game." Det. Sabolik and his partner went behind the wall where they had observed the two males go. They flipped over a rock and discovered a loaded handgun. The two males were detained as they exited the field. Det. Sabolik identified one of those males as 18-year-old Kartrell Sims ("Sims").

{¶ 6} After speaking to Sims, Det. Sabolik learned that Sims was the one who "stashed" the handgun under the rock. As Det. Sabolik was determining next steps, Sims's mother, Whittaker, arrived on scene. At that time, Det. Sabolik "explained to [Whittaker] what the situation was and what had happened. And while I was speaking with her she told me that she was the one that gave the firearm to Mr. Sims and that she gave it to him because the streets are dangerous and he gets picked on at school." According to Det. Sabolik, Whittaker freely "offered that information" to him. He did not ask her any questions about the firearm, nor did he suspect her of a crime.

**B. Defense Witnesses Testimony**

{¶ 7} Sims testified that he walked to the football game from the house he lived in with Whittaker. Sims recalled that Whittaker was not home at the time. Prior to leaving, Sims retrieved the handgun from Whittaker's locked safe. The safe has a combination lock, and Sims did not recall the combination at the time of trial.

Whittaker gave Sims the combination "for emergencies like if something happened inside the house."

{¶ 8} Sims testified that he did not have permission to take the gun that day and that he knew he was not allowed to take the gun. According to Sims, he told police that he took the gun that day because there was "a lot of violence going on in the city."

{¶ 9} After Whittaker got home from taking her youngest son to work, she received a phone call and learned that Sims was getting arrested. She drove to the football game. When Whittaker arrived, she spoke to Sims who was handcuffed in the back of the police car and learned that he was under arrest for taking her gun out of the house.

{¶ 10} Whittaker testified that it was not true that she admitted to giving Sims permission to take the handgun. Asked whether she told Det. Sabolik that she gave Sims permission to take the handgun, Whittaker responded, "Not per se with him. He was in the vicinity of the conversation, but I didn't outright tell him * * *." She believed that Det. Sabolik misunderstood what she was saying to another police officer "about our neighborhood, our neighborhood is, you know, bad out here." Whittaker also stated, "I'm a law-abiding citizen. I wouldn't give a minor child a gun, not my gun that's registered to me." According to Whittaker, she "would have been truthful" when speaking to police officers.

## III. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 11} Whittaker was convicted of improperly furnishing firearms to a minor in violation of R.C. 2923.21(A)(3), which states in part that "No person shall * * * furnish any handgun to a person who is under twenty-one years of age, except for lawful hunting, sporting, or educational purposes, including, but not limited to, instruction in firearms or handgun safety, care, handling, or marksmanship under the supervision or control of a responsible adult[.]"

{¶ 12} "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed," would convince the average mind of defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 13} In her first assignment of error, Whittaker argues, "The trial court erred in failing to grant Appellant's motions for acquittal where the State failed to provide sufficient evidence to sustain a conviction because the only evidence of how the youth came into possession of the handgun is Appellant's alleged admission as testified to by the arresting officer."

{¶ 14} In her first assignment of error, Whittaker acknowledges that there is evidence in the record that she furnished the handgun to Sims when he was 18 years

old.  Det. Sabolik testified that when Whittaker arrived on the scene of Sims's arrest, she admitted to police that she had provided the handgun to him because the area was dangerous, and he was picked on at school.  This testimony, if believed, is sufficient to sustain her conviction.

{¶ 15} Whittaker's first assignment of error is overruled.

## B.  Manifest Weight of the Evidence

{¶ 16} A challenge to the manifest weight of the evidence "addresses the evidence's effect of inducing belief.  * * * In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?"  *State v. Wilson*, 113 Ohio St. 3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.  "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."  *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).  Reversing a conviction under a manifest weight theory "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 17} In her second assignment of error, Whittaker argues that she lied to police that she gave the handgun to her son in order to protect him and therefore her statement to Det. Sabolik is not credible.

{¶ 18} The trial court heard testimony from Det. Sabolik that Whittaker admitted she gave the handgun to Sims "because the streets are dangerous and he gets picked on at school." The court also heard from Sims and Whittaker that Whittaker did not give Sims permission to take the handgun.

{¶ 19} The trial court heard the conflicting testimony and resolved the inconsistencies in favor of the state. This court has consistently held that "when considering a manifest weight challenge, the trier of fact is in the best position to take into account inconsistencies, along with the witness's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible." *State v. Holloway*, 8th Dist. Cuyahoga No. 101289, 2015-Ohio-1015, ¶ 42.

{¶ 20} Whittaker's second assignment of error is overruled.

{¶ 21} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

MARY EILEEN KILBANE, P.J., and
SEAN C. GALLAGHER, J., CONCUR